May it please the Court, Kirk Lenhardt, Scott Schoen, Walt and Jones Vargas, on behalf of Clark County, Nevada, also present with us is Lee Thompson from the Clark County District Attorney's Office. We represent Clark County as the owners and operators of McCarran International Airport. As I'm sure the Court is very well aware, we are here today appealing from the arising out of an inverse condemnation claim due to aircraft overflights. There are three primary issues that we are raising on this appeal. First and foremost is what we believe to be the total and complete lack of federal subject matter jurisdiction for this matter. The matter simply should not have been in the Bankruptcy Court nor the United States District Court. Counsel, if I could just stop you for a minute, we can get to the related to argument in a minute, but doesn't the county have an almost insurmountable burden with Sisolak? Whatever we may think of the Nevada Supreme Court's rationale or its analysis of federal taking cases, in several instances in that case, the Court makes it very, very clear that it is in construing the Nevada state constitution. Even one of the dissenters concurs that that's what it's doing. Aren't we bound by that? You are bound by their state constitutional interpretation. Right. Yes. I cannot back away from that. But if this Court doesn't have jurisdiction, it goes back to the state court. And there are significant statute of limitations issues arising out of this litigation. I understand that. We've got so little time on this rather complex case. Do I understand correctly, then, that you agree that you're bound by Sisolak? You're really throwing your ox on the altar in terms of the related to jurisdiction. Is that right? No. I'm not going that far either. I am bound under Sisolak to the extent it interprets the state constitution. I do not believe this Court is bound under Sisolak on its interpretation of 49 U.S.C. 401.02 and 401.03, where clearly Congress has preempted the right of flight and created in the public a right of flight in the navigable airspace of the United States to the extent that Sisolak contravenes that Federal statutory scheme and attempts to create a 500-foot level, let's say, from the ground up, creating an absolute property right, to the extent that interferes with the navigable airspace of the United States, and specifically in this case, the right to safe takeoffs and landings, which go below 500 feet under the statutory scheme, the Federal government has preempted that from the states, and this Court is not bound by the Sisolak court's interpretation of that statute. What decision do you point to, if any, that says that that statute preempts state taking? You can go back to Griggs. Griggs cites the statutory scheme. I believe this statute came into effect after the Griggs decision – excuse me, before the Griggs decision, after Cosby. And although, you know, Griggs certainly cited the statutory scheme and the preemption principles, although it ruled that the airspace, you know, the utilization of the airspace over the property in Griggs was so low and so frequent under the Cosby test that it destroyed the use of the property. It did not in any way question the Federal statutory scheme. And once again, Congress has dictated that the public has a right of flight, and that right of flight is an exception to the title held by a landowner. You cannot impose takings liability if it is based on the, you know, again, the Federal right of flight. And that's the position we're taking. And to the extent the Sisolak court attempted to do that, or to the extent Judge Jones attempted to do that, first sitting as a bankruptcy judge, then sitting as a United States district judge, he erred. Now, as to State constitutional interpretation, no matter how tortured the Nevada Supreme Court's analysis may be, I have to live with that. And I do, of course, live with that. But we have other issues here today. And if I can, as I started my initial comments, the jurisdictional issue is probably one of the most important issues facing us here today, because there are significant statute of limitations issues if this matter is remanded to the State court. Now, only if it's remanded to the State court. But that doesn't deal with the issue of whether it ought to be here in the first place. As you know, Celotex Corporation v. Edwards says that proceedings, in quotes, related to bankruptcy under 1334B includes causes of action owned by the debtor, which becomes property of the estate, such as State breach of contract actions. Now, in this case, you've got the debtor owning the property. You have a major piece of litigation. Why isn't this related to that? It's a post-confirmation issue, Your Honor. Keep in mind that when these debtors, or the debtor in this case, CEH, decided they wanted to pull this into the bankruptcy court because of their problems in the State court procedures, a plan had already been confirmed, a plan that provided for a $65 million assets. They said under oath in their plan that that building and that property was worth $65 million and could be sold for that amount of money. There was only $15 million in debts. That's a $15 million post-confirmation cushion. There is no, and there is no reference to this litigation in the bankruptcy plan. These landowners want that litigation for themselves. Quite simply, this litigation was not necessary to the plan, it was not necessary to the funding of the plan, and it was not anticipated that it would be part of the plan. Do you have any authority for, I hear what you're saying, but do you have any authority for the fact that if a plan has already been confirmed, that related to jurisdiction is not, basically it doesn't apply? Celotex doesn't mean that. We cite a number of cases in our brief on the post-confirmation principle that on post-confirmation standards, it's a different application to the related to doctrine. It's a much stricter application, and that the property must be necessary to the  We cite those cases. We stand by them, because it is clearly, as Judge Jones, I think, knew, because he was sitting as a bankruptcy judge at that time, the post-confirmation analysis is significantly different than the pre-confirmation analysis. What he did was mix the two, because, you know, being the individual that he is, he wanted this, these individuals to have their right and their day in court. He didn't like what the State court was doing, although I would suggest under Rooker Feldman, that was not his role. It's important, I think, in discussing federal subject matter jurisdictions, it's really three prongs, Your Honor. We have the related to jurisdictional issue, but we also have significant ripeness issues, and we have significant Rooker Feldman issues in this case. You only have ripeness issues if the State supreme court, if Sisolak swept out, because, as you know, if Sisolak is gone, then, of course, ripeness issues clearly apply. If Sisolak is still there and applies, the State supreme court says that under its jurisprudence, you don't have to prove ripeness in order to have a cause of action. Do you agree with that? No, I don't. Okay. Tell me why. I absolutely do not. The Sisolak decision did not overturn Williamson and San Remo. The Sisolak decision didn't get to this issue, not to the issue of ripeness in the Federal context. Well, in the Federal context, we're talking about the State context here. But I'm talking about – I guess we're like two ships in the night here right now. I'm talking about this Court's jurisdiction to hear this case with all deference and the United States district court's jurisdiction to hear this case. If the landowners had not exhausted their State rights and, in this case, allowed the case to go to term, which would have been the ultimate dismissal under NRCP 41e, the case is not ripe for this Court's adjudication. It must go back to the State court. That's what I'm saying. And that issue was never addressed in Sisolak because that issue wasn't before the Court in Sisolak. It's a much different issue. The ripeness issue in Sisolak really went to a situation where did they have to apply to the county or not. That is not the ripeness issue before this Court. The ripeness issue before this Court goes to the exhaustion of State administrative and State judicial remedies. But you're basing that on Federal law, right? I'm basing that, of course. I'm basing that on – because that's where I am. I'm basing that on San Remo. I'm basing that on Williamson. I'm basing that on what this Circuit has done in the Carson Harbor case and the Santa Barbara case. This Circuit has made it clear where a State provides a judicial remedy, you must exhaust those judicial remedies in the context of an inverse condemnation action. If you're proceeding under Federal law. I would suggest even if you're proceeding under State law, to get into Federal court on a State law claim, you still have to exhaust the State law remedies. That's what was not done here. I mean, that's – Does a State law remedy require an application for a variance? The Nevada Supreme Court has said it does not. Whether I agree or disagree with that is probably irrelevant. The Nevada Supreme Court says if it's a per se taking, you do not have to apply for a variance. Our position is under any of these cases, it's a Penn Central analysis. Obviously, we've lost on that issue. But that, again, doesn't go to the jurisdiction of this Court. The rightness issue in this Court is the exhaustion of the State court remedies. These landowners, look what they've done. They sat on their hands for five years. They got to the time where the State judge said, I'm not going any further. I'm going to dismiss this case. They go then to the bankruptcy court and ask him to lift a nonexistent stay. He says the stay doesn't exist, but I'm bothered because I don't want to see your case dismissed, so I'm going to lift the stay so it can be – this case can be removed to bankruptcy court. Two days before this case was to run and to be exhausted, it's removed to Federal court. On the motion to remand, one year later, the county raised the jurisdictional issues, and the district judge stated, unless you waive your five-year rule, I'm not going to remand. That is where, with all deference to Judge Jones, he went too far. He substituted his judgment for the procedures and the laws of the State court. He acted as a quasi-appellate court. That is not the role, with all deference to this Court, that is not the role of this Court. I would suggest under those circumstances, we had a clear violation of the Rupfer-Feldman doctrine, as this Court's defined in Bianchi. You clearly have a right in this issue because the State procedures have not been exhausted. And, as I think I've explained on the related two jurisdictional issues … Can you include the dismissal that would inevitably follow in the State court as being part of the exhaustion issue? Absolutely. Absolutely. And under Nevada law, a dismissal under 41e is presumed to be with prejudice unless the court says it's without prejudice. With that assumption, that dismissal under 41e has a race judicata effect under Nevada law. Again, what happens if this becomes the norm? A landowner files court in State court, decides he doesn't want it like the judge or whatever, he just sits on it for five years, then runs over to Federal court on the eve of the dismissal and has the Federal court take care of it. That clearly can't be what the Supreme Court envisioned in Williamson or San Remo. When it required that State court proceedings and State court … State court procedures be exhausted. Now, you alluded to the CICEL Act decision, and I'm going to try to reserve a couple of minutes. We know what the exhaustion would have been. I'm sorry, sir. We know what the exhaustion would have been to bend it against you. No. It would have been dismissal on this case, Your Honor, because they had — their five-year rule had run. It would not bend it against us. Under Nevada procedural … Well, they didn't go to trial. You're implying they didn't go to trial in the State court. Because they sat on their rights. That's correct. But you know what? At the time of the trial, I'm not so certain it would have gone against them. CICEL Act just came out less than a year ago. This trial should have occurred in, oh, gosh, a number of years ago. I forget the exact date. I think 2000. We still would have ended up with the CICEL Act decision, maybe in your case. Well, it depends. It depends on which Supreme Court I'm getting. I'm sure you're aware the first Supreme Court that heard this, we prevailed in the Sue case. The next Supreme Court that heard it, after a change of personnel, we lost on CICEL Act. So I guess it would depend on which court we had, which is a whole different issue. If I can address something that we started the argument with, and like I said, I'd like to reserve a couple minutes if I can. There was a reference to the right of flight, again, and the effect of the CICEL Act decision. Let's step back a second. There's something that's been missed in all these decisions, and that's the concept of constitutional estoppel. These landowners negotiated a deal with the county to build a building 38 feet high, 501 rooms. That was in accord with the height limitations that were available and what the FAA would permit to be built without a hazard determination under its Form 7460. They built the building, occupied it for three years, conducted business, then decided it wasn't going the way they wanted and filed an inverse condemnation action. Government can't operate that way. If they had an objection with the height they were allowed to build, they should have filed that objection at that time. There is law in this circuit. There is law in every circuit that you may waive a constitutional right. That is exactly what occurred here. When they chose to operate, they waived that right. If they did not like the height they were permitted to build, they should have filed suit in 1990 when they made the deal with the county. I think it was well put by the California Appellate Court in the Pfeiffer decision when it discussed this very issue of constitutional estoppel. Government would devolve into chaos if landowners were allowed to make a deal with the county, build what they wanted or the municipal government, the state or whatever, build what they wanted and file suit when they saw fit. It is impossible for a municipality, an airport, Clark County, whatever, to operate that way. I appreciate the importance of that argument, but I want to get back to something that the Court said in Sisselike that addresses your right of flight issue. I'm quoting now from page 1119. The Court says, The United States Supreme Court emphasized in Grigg v. Allegheny County that all airplanes may fly below 500 feet when necessary for takeoff and landing. This right does not divest the property owner of his protected property right to his usable airspace. Rather, a landowner may still make a claim for compensation for the government's abuse of that airspace, citing Reyes-Matson and, of course, also the Grigg v. Allegheny County. What's your take on that? The U.S. Supreme Court has steadfastly refused to define what is super-adjacent airspace compared to the right of flight. It didn't do it in Griggs, although in Griggs they were flying solo. They were affecting the ability to live in a house. In Cosby, they were killing chickens or whatever. In this case, there's no doubt they weren't interfering with the ability to operate the building because the building operated. No, what the Court misunderstood there was Griggs, Cosby, and their progeny never created a right in the landowner up to 500 feet. The State Supreme Court has done that. And, again, to the extent it interferes with 49-40102 and 40103, it creates a problem. Imagine what's going to happen if each state starts defining what the individual right of airspace is. St. George is 300 feet. Arizona is 400 feet. California is 700 feet. So your argument is that federal law preempts all such state constitutional law decisions. Let's just say there were 50 SISILAC decisions rendered in the 50 United States. Your argument is that the federal statute that you cited in 49 U.S.C. preempts those decisions. To the extent they interfere with the right of flight, absolutely. And in the case of SISILAC, when you go to 500 feet, you interfere with the same right. Well, they're not saying they interfere. They acknowledge that there is that right of flight, just like there is a similar right with the navigation easements. They're simply saying, you've got to pay for it. They don't say you don't have the right. They just say, this is a private right. It goes up to 500 feet by our jurisprudence. You can fly in and out of there all you want, but it's a private right. You've got to pay for it. That's the issue. And to the extent, then, that it interferes with the statute, and like I said, that's not what Griggs says. Griggs says it's got to be so low and so frequent to be paid for. To the extent that the Nevada Supreme Court has carved out this 500-foot limitation, they have to. But, again, counsel, with respect, you're – believe me, we've struggled with this. I've been doing this for six years. Under federal law, your position is probably right on. Under state law, we have a whole different regime here. And it seems like the state court is saying, we don't have any question that the planes can come and go. There is that right in the federal government. There's the right in the state government. But if you take what we, the state Supreme Court, says is a private property right, you can run these planes in and out of there. You have got to pay for it. Where in your jurisprudence is that countervailed so that we can do something with it? To the extent it interferes with the public domain as defined by that statute, you can do something with it. You're not bound by their interpretation. And keep in mind – Well, again, they're not – it's not the federal government that's paying for this. It's the county that's paying for it. I understand. These people have the right to fly in and out of there. It doesn't interfere with it at all. And what I'm saying is, and I'm not trying to dodge this issue with you, but this is an issue that we probably shouldn't be discussing here today because jurisdictionally, I shouldn't be here. We understand you. That's where I should be somewhere else, and I'll take that up in the state Supreme Court, of course, in the context of a statute of limitations issue. Right. It looks like I've managed to move the time. Thank you, counsel. Thank you. May it please the Court, my name is Paul Ray, and I represent the HEERS and CEH as well as the Vacation Village. And so the – I would agree with the comments that the CISLAC case controls – the facts are similar. I can see that the Court has observed many of the similarities of the facts. The – some of the most important ones that I wanted to highlight would be the fact that it's the same runway, the same ordinance, same date of taking. Okay. But we're – I think everyone's in agreement about CISLAC. One question is, is there federal preemption? As to the statute that Mr. Lenhart was just referring to? No. As to the state's right to adopt rules that burden interstate commerce? No. Well, not as to this one. I'm sure there would be as to some rules that would burden interstate commerce, but not as to this one. And the Supreme Court looked at that in the Jankovich case. And just to be fair, I had not – no one had argued Jankovich before, but it was before the U.S. Supreme Court, and that's why I just had found it recently. But in Jankovich, the same argument was made, that this is going to have a horrible disruption to the air transportation system of the United States and to the state of Indiana. And one of the arguments that I – that counters to that is that, well, the state of Indiana and the air transportation system are in good health. And, in fact, the Jankovich court held that the federal – there's no conflict with the state constitutional scheme in Indiana of protecting the airspace rights with the Federal Airport Act. And so that was specifically held in Jankovich, which was after Cosby. And I didn't know this fact that he said about when the statute was enacted, but he did mention that it was before Cosby, which Jankovich was after Cosby. Is there a limit to the airspace rights grounded by the Nevada Supreme Court? A limitation to the airspace rights? Yes. The statute would limit – that's true – how high you could go with that. Well, the Nevada Supreme Court didn't place that limitation in its opinion. They placed no limitation on the right to occupy whatever they wanted. Oh, except as long as it's within the airspace that's not controlled by the public, which would be the 500-foot level or, as the statute defines. So, in other words, for example, a typical piece of land, the statute does not regulate construction up to 500 feet. And so in that situation, the state law right could go up to 500 feet. If there was ever a conflict of someone going higher than that, it's my understanding, for example, in Las Vegas, there's the stratosphere. Maybe this isn't in the record. But anyway, if you go above that, there has to be FAA approval. How about the airplane flying over your house? Pardon? How about an airplane flying over your house? Yes, if it flies below 500 feet, there is a cause of action. It's a little different than this. It wouldn't be a taking necessarily. I think it's a trespass, nuisance type of thing for dust and fumes, which is what this easement was for. So that wasn't actually the nature of this claim. But it is a type of a claim. I want to ask you a question, counsel. Again, this is assuming, arguendo, that CISOLEC controls, with deference to your opposing counsel there for a moment. But if it controls, and if we get to the issue of compensation, it seems to me that in CISOLEC, the state supreme court said that at that point, variances and, if you will, ripeness issues after the fact, really do have an impact on the amount that your clients are entitled to. I'm looking here specifically at 1128, page 1128. The court says, although evidence regarding variance procedures is irrelevant to establish whether a property owner is entitled to compensation for a regulatory per se taking, such evidence is still relevant in calculating the amount of compensation due. Evidence of future changes affecting the property, such as variances or zoning ordinances, is admissible to determine the amount of compensation due if the change is reasonably probable. Under that reading, if we felt we were bound by CISOLEC, would we not be bound to remand this to the district court for further hearings regarding whether or not the variances are available, whether it would be a requirement that it be sent back to the parties to go through the procedures, if you will, to see whether variances are available and so on, before the court could in fact determine the appropriate amount of damages? I don't believe so, because that's not a part of CISOLEC or any other case in Nevada. In fact, County of Clark v. Alper,  is to file your inverse condemnation action. In Alper, there was no exhaustion. But that was really an issue of the prejudgment interest, was it not, in Alper? Well, there's that issue also. But no, I just meant the basic takings, inverse condemnation claim. That doesn't make any sense, counsel. The hardest issue here, of course, is whether there's been a taking at all. You've got the Federal regime and you've got the State regime. But if you assume arguendo that there's been a taking because the Nevada Supreme Court says it's so, it's a very difficult, different issue as to what exactly has been taken here and what it's worth. And as I understand this Nevada Supreme Court opinion, they're saying at that point, variances are very much a factor, because if they can build up to 150 feet or 200 feet, there's a whole lot less taken than if there is less. Now, obviously, both parties will argue that, well, you can't because you've got these planes coming in. But we don't know that. That's really not before us. We have no information that would enable us to make a determination if one assumes that there is a taking, what the appropriate amount is because of this language in Sicily. Do you agree with that? I don't agree that there's no information on it. That permits us to make a determination. I know there's information, but it permits us to make a determination. Well, and some of those issues, and I don't mean to go around your issue, but some of the issues you just raised relate to our cross appeal. And that is, you mentioned specifically the 150-foot level, which is called the horizontal surface. And we do have testimony by the principal planner of Clark County that Clark County has never in its entire history refused to allow a variance to go through that 150-foot surface. Now, he also went further and said that the expert that Clark County relies on nationwide, he said he had never heard of it nationwide. Now, we do have, and this is where it could be useful to consider the fact of, and I agree, as far as determining the damages, I think that's a reason for a remand because of that alone, although I don't believe that was necessarily exactly what your question was, but it does relate to it. And how I would illustrate, I've tried to think how I can illustrate the similarity between Syslack and Vacation Village. I just come up with my arm as being the approach path into the runway. And the Syslack property sits here on my elbow and is out just a little bit. Vacation Village is at my wrist and is out a bit. So there's two of the nine corners of the Vacation Village property are outside the horizontal zone. But those two are in the runway protection zone. And that's the zone where Clark County imposed the passenger facility charges to acquire $60 million because the airport director, Mr. Broadbent, testified that Clark County didn't pay for this in 1990. Talking about, anyway, the county said they didn't have enough money to pay for this, and that's the reason they didn't go for it, but they needed it. And so they imposed these passenger facility charges to acquire that runway protection. And that's that northernmost corner of the property. And so that's another one of the issues of the damages. And I do think that there should be a remand for determination of that, although we've provided, if the same per dollar figure on the property applied, what that would be. But again, this other issue about the airspace above the horizontal zone is not defined by the court. It was never reached because the court assumed that you could never get a variance above the 500 foot level. But the market, both appraisers, both for the county and for CEH, testified that the market recognizes the highest and best use including probable variances that can be obtained. We're just talking about value. There doesn't have to be an actual variance applied for. It's just what is likely that the market can recognize. What was the what are the facts regarding the discussions with the county and the FAA about the maximum height? There was one agreement that you reached with the FAA that actually there were two agreements ultimately it seemed to me. Once you were going to go up to 35, was it? And then later you asked for 42 and the FAA said 38. Right. There was the determination of air hazard. We had asked for 76. We do have a denial by the FAA that said we couldn't build to 76 feet. Now at that point, and the principal planner of the airport testified that they wouldn't, if it's a determination of air hazard, they're not going to be able to override that because they could lose their federal funding and they wouldn't, of course. And did they make a determination of the FAA that it could be no more than 38? No, I don't think the FAA ever made that determination. So the FAA approved 38? I believe so. Although... But did you ask them for more? Yes, that's what I'm saying. You asked for 76, but was there any request for anything in between? I'm not sure, but we're asking for and what he found was up to 100 feet. So the ruling has been that it was denied up to 100 feet which is in compliance with what the FAA said also. So it was the county that denied it or the FAA that denied it? The FAA. And one thing also I thought of another part of an answer to your question about the amount of damages. There actually isn't a dispute about the amount of damages. They didn't say, for example, Judge Jones didn't properly weight the appraisals. It's about a $4.8 million value that he put on this airspace. So when we're talking about a remand for additional damages, we're talking about the area above the 100 feet. Not something that was disputed. The county didn't dispute the amount. But we're not bound by Judge Jones's determination of whether or not if you will, post-taking I don't want to call it ripeness, evaluational issues have occurred. In other words, it seems to me that even under the Nevada state law, the Supreme Court said that what you could do with the property and by that it meant with variances and zoning changes of one kind or another it would affect the amount of property that's actually taken. It seems to me that that's in that ruling. If we're bound by the good we have to, I mean the bad, we have to get the good perhaps. It seems to me that's what the Nevada court would need to consider. Do you agree with that? If it were in dispute but the county didn't dispute the value on that. You're saying they've in effect waived the county's waived the issue of the amount of damages? They argued it was a lower value but they didn't appeal that issue. That's what I'm saying. They didn't raise it on this appeal. So you're arguing waiver in effect? Of the argument because it was never made. I would say that. Maybe if I could address quickly because CEH is requesting full just compensation and so I've mentioned the runway protection zone which again is analogous to that Griggs situation of the approach to the bridge. Judge Jones didn't allow that but it's necessary for this airport is that runway protection zone and so that's another element of just compensation. The area above the 100 foot airspace and ALPR also says that you get your taxes if the county collects taxes on property that was taken, ALPR says they're entitled to reimbursement for that which is what we've shown. There was a tax deed recompense that shows the amount since 1991 of taxes. What do you say about the county's argument that because this was not necessary to the bankruptcy and it was post I guess post determination of the debt that we apply a different standard to that? Yes, Your Honor, and I pulled the case. The county indicated that they rely on their cases. I submit the Standiford case that they rely on has absolutely nothing to do with that issue. The case that does is this court's decision of In Re Pegasus Gold and it looks like it's page 1194 and the comment that the court made there is Is that the court of claims? No, that's the one that's denied circuit. What's the site again, please? It's 394 F. 3rd 1189 and I'm going to page 1194 as the pinpoint site and that's where the court said that matters affecting interpretation, implementation, consummation, execution or administration of the confirmed plan typically have the requisite close nexus and in this case, and they specifically gave the example of a litigation and liquidation trust which is exactly what the provision of the plan of reorganization had for this claim. So you don't think much of your opposing counsel's jurisdictional argument? I definitely disagree with that and the other element of the just compensation which Judge Smith mentioned is the prejudgment interest I'm sorry, I forget which one I mentioned but anyway, the prejudgment interest issue about being an element of just compensation and what happened here, Nevada has a, I don't know if it's unique but it's Nevada statute on prejudgment interest and it's actually calculated differently than post-judgment interest and in Sisolak, the court determined that at least the post-judgment rate was just compensation now, it doesn't have the explanation about that but if you look at the numbers and we do have in the evidence, you can see that those were the post-judgment interest rates that applied and they determined that was just compensation so as a minimum under the Alper and the Barsi case, the post-judgment interest would be just compensation and also, Barsi goes farther and says, if you have evidence that the landowner would have invested in reasonably similar property as we have here because they were in the process of phased development so we know that they would and they even extended their zoning extensions and so forth as far as they could then you can use the land appreciation value and so that is allowed under Barsi and at a minimum under Sisolak, it should be the post-judgment rate and the only reason we didn't get that is because they didn't file an imminent domain action when they knew there was a taking. Do you contend that the district court applied the nexus requirement in the relocation act sufficiently to tie in attorney fees? Yes, that was very clearly done because the nexus has to be federal funding at that airport we do know that there was federal funding for this runway extension Was that proven? Yes. It was for the federal funding and actually we did enclose those papers in the supplemental, I'm sorry, the excerpts the attorney's fee argument is then under that Court of Federal Claims opinion of Osprey which the Supreme Court of Nevada in the Cowan case also recognized that contingent fees are reasonable in inverse condemnation actions they're listed by authorities as being one of the quintessential, I'm using the wrong word but they're one of the most typical contingent fee type cases along with personal injury is inverse condemnation and we have the evidence that the contingent fee that our market price and that's because we were linked into some other transactions that were involved in the bankruptcy but we agreed to do that and so we asked the court to affirm the ruling on the value of the airspace that was taken and to reverse so as to allow the full just compensation for the taking of the runway protection zone, the area above the horizontal surface for the collection of taxes and for the pre-judgment interest and then we asked the court also to award the contingent fees which have been shown to be reasonable Thank you We'll give you a minute or two at maximum Thank you very much, Your Honor A couple quick things we certainly we certainly rely on that decision we invite the court to review that case closely as well as the other night circuit decision we cited Abraham vs NorCal Waste System 265 Fed 3rd 811 at page 819 There has been some discussion on pre-judgment interest here. I want to remind the court that there was a 12 year delay in this litigation and the county has been assessed pre-judgment interest for the entirety of that time The Nevada statute is clear past two years you've got to show the delay is the county's fault There is no delay in this case that is the fault of Clark County The landowner sat on their rights both in state court and in the district court because initially Judge Jones dismissed their case in district court also then Judge Jones unfortunately took a significant period of time to decide this case I would suggest to the court that the imposition of 4.3 million dollars of pre-judgment interest in this case is simply unfair and uncalled for The last thing I've got to say in the very brief time that I have is that there's been a reference to variances in the horizontal zone in Clark County That's the 100 foot plane that goes all the way across Clark County Anybody that's traveled to Las Vegas realizes that the entire Las Vegas strip is high rises that are 30, 40 and 50 stories high Does anybody not think that that horizontal zone has been penetrated again and again and again You can apply for a variance in response to the court's questions to damages There are variances routinely granted and that is an issue that if this matter is remanded that would have to be decided by the district court and remand would be appropriate Although I want to stress under no circumstances I want these comments to be construed that in a way shape or form I'm waiving my jurisdictional argument I still think that's the heart and soul of what we're arguing here today And I've just run out of time Thank you very much The case just argued will be submitted The court will adjourn for the day The court will adjourn for the day
judges: Ferguson, Reinhardt, M. Smith